Shackeleord, J.,
delivered the opinion of the Court.
The original bill in this case, was filed on the 4th of January, 1866, in the Chancery side of the Common Law and Chancery Court at Memphis. It appears from the record, the complainants are an incorporated company, under the Act of the Legislature, passed June, 1865, with power to contract, maintain and operate street railroads in the city of Memphis, etc. They organized according to the provisions of the charter, obtained the assent of the corporation to construct ten miles of railroad, let oui the contract for the construction; and, after notifying the authorities of its intention to proceed, under its charter, in the construction of the roads, they tendered and offered to the city authorities, a full compliance with the provisions of the Act of Incorporation. They had taken possession of Main Street, as far as was necessary to construct the track without obstructing the travel. The Mayor of the city, by the police acting under his authority, forcibly ejected them from the streets, driving the contractors from their work. The bill, among other things, prayed an injunction against the Mayor and Aldermen, enjoining them from interfering with their operations, or making any contracts with others for street railroads. An injunction was issued according to the prayer of the bill. A few days after the filing of the bill, a petition was filed by a body *408 corporate, under the name and style of the People’s Passenger Railroad Company, incorporated by An Act of the Legislature, on the 1st day of February, 1860, in which they aver they are interested in the matters pending between the Memphis City Railroad Company and the Mayor and Aldermen; that they have a direct interest in the result, and are necessary parties, and ask to be permitted to be made defendants, which was ordered by the Chancellor. They filed their answer to the original bill, asking and praying it should be taken as a cross-bill against both of the original parties. It appears from the answer, cross-bill and exhibits, one Henry D. Small, and others, his associates, in 1859, organized themselves into an association, styled “ The People’s Passenger Railway Company of Memphis;” and, under an ordinance passed by the Mayor and Aider-men of said city, on the 20th of November, 1859, in which they invited proposals for building street railways, they made sealed proposals for building and operating the roads specified; which ordinance is as follows :
“jBe it ordained by the Mayor and Aldermen, of the City of Memphis, That the right to construct railroads for the transportation of passengers, exclusively, through the city hereinafter named, by cars, drawn only by horses or mules, is hereby granted, for the period of twenty-five years from the passage of this ordinance, to the parties hereinafter designated by said Board.”
The second section of said ordinance provides: “The right to construct railroads, under the provisions of this ordinance, shall be confined to Main Street, connecting *409 the Mississippi & Tennessee Railroad Depot, with the Memphis & Ohio Railroad Depot, and Auction Square, and other streets that are set forth.” The other sec tions of said ordinance, provide for the manner in which the track shall be built, the rules and regulations by which the same shall be governed, keeping the same in order, etc., except section 17, which is as follows :
“ Sealed proposals shall be received by the Mayor and Finance Committee, for building street railroads, in accordance with this ordinance, until the 29th of November, and the same shall be reported to, and awarded by, this board, at the first meeting thereafter.”
Section 18th provides: “Rids and propositions shall be made for each street, separately, or for the whole ; and to the best responsible bidder shall be awarded the road for which he may bid, or for all the roads, if such be the best bid.” Which ordinance was duly published. And afterwards, on the 29th of November, 1859, the Finance Committee, to whom was referred the bids for building the street railways, reported to the board, that they had received bids from various persons, also from Kirk & Small, agents for the People’s Passenger Railway Association; that they were, after a careful examination, of the opinion, that the bid of Messrs. Kirk & Small, was best for the interest of the city; that, a stipulated sum per annum, was preferable to taking a part of the income of the road. The bids were read, as appears from the proceedings; and the proposition of Messrs. Kirk & Small, as agents for the Passenger Railway Association, was, Main and Jefferson Streets, for twenty- *410 five years — the first five years exempt from taxation; the second five years, five per cent, on gross receipts, or, $1,500 per year; the third five years, ten per cent., or, $3000 per year; the fourth five years, twenty per cent., or $6000 per year; the fifth five years, thirty per cent., or $15,000 per year.
Upon submitting said proposition, the following resolution was adopted:
“Resolved by the Board of Mayor and Aldermen of the City of Memphis, That the Mayor and City Attorney be authorized to close the contract hereinafter provided, with Messrs. Kirk & Small, and others, to make railways on all streets named in the railway ordinance, and on Auction Street and the Raleigh road, from Promenade to the corporation line — they paying to the city the sum of $1,275, at the time and on the terms named in their proposition; the said terms being required to- complete the road on Main Street in four months; the road on Jefferson Street within eight months— all other streets named, within two years, the city reserving the right to contract for the building of other roads on other streets, not named in the ordinance, whenever they choose to do so, the city reserving the right to determine the character of iron used,” etc.
On the 8th of December, 1859, a petition was presented by the property holders of Main Street, against the builders of a railroad, which was rejected. Another resolution at the same meeting, was offered, that Main Street be stricken out of the contract, and Front Street be inserted; which was, also, lost. At the same meeting, the following resolution was adopted:
*411 “Resolved by the Mayor and Aldermen, That the permission of the board is hereby given to the parties to whom has been awarded the contract for city railroads, under ordinances passed Nov. 20, 1859, to have them incorporated by the Legislature of Tennessee; said incorporations in no way to change the conditions and propositions heretofore made and accepted by the parties, respectively; the same being intended to secure the rights and more certainly to preserve the remedy of parties against each other, respectively, in case of any violation of contract hereinafter entered into, and not to prevent an organization and incorporation of another company to build street railways, or any other street improvement, if hereinafter found desirable; provided, however, the said Act of Incorporation shall ■ require the consent of the city of Memphis for the construction of railways. Afterwards, in pursuance of said ordinance, the said Kirk & Small, and their associates, applied to the Legislature, in session at Nashville, and, on the 1st of February, 1850, An Act was passed, incorporating them and their associates, under the name and style of “The People’s Passenger Railway Company,” with all the powers incident to incorporations.
Section 4th of said Act, is as follows: “ That said company, by their Directors and officers, shall have power to complete and execute all contracts and agreements entered into with said City of Memphis, or other parties, for the use of the streets of said city, or enlarge the terms of the same with said parties; and may operate street railroads, by animal power, on all streets in said city of Memphis, with the consent of *412 said city; may enter into all necessary contracts for the building and operating of said road.”
Vm. Kirk, who was elected President of said company, presented a communication notifying the Mayor and Aldermen of their incorporation, and in which they state they have examined the contracts prepared for their signature by the City Attorney; that they are in accordance with the agreement embodied in the ordinance and resolution which had been previously passed by the Board of Mayor and Aldermen; that, by resolution of the Board of Directors of the People’s Passenger Railway Company, they are authorized to sign the contracts; that they had prepared the iron and lumber, and were ready to proceed to work, and were prepared to give in their required bond, &c.
On the presentation of this communication, it was determined by the Board of Mayor and Aldermen, on the 22d of March, 1860, that they recede from the undertaking of having a street railway on Main Street, because' of the great opposition of the property holders on said street.
The board recognized the moral, but not legal obligation, to make good to those who had been incorporated in the street railway company any real dainage by change of purpose, either by deduction of the bonus, should another street be selected instead of Main Street, or, if they choose to abandon the undertaking thereby,, by making compensation by way of damages, if any.
At an adjourned meeting, on the 23d of April, 1861, a resolution was passed by the board that they would be prepared to sanction the construction of the railways, upon the terms of the ordinance, whenever not less *413 than two-thirds of the property holders on Main Street expressed their willingness to have them established.
It is alleged in the answer, that they were preparing to enforce their rights against the Mayor and Aldermen, when the war came on, and the Courts were closed, and the corporation passed under the control of the military authorities. They insist, in their answer, that they are legally entitled, under their charter and the franchises granted them, of operating street railways, on streets embraced in the ordinance of the 20th of Nov., 1859; that the Acts of the Legislature granting to the Memphis City Railroad Company, passed in June, 1865, was a violation of their franchise, so far as it embraced the streets included in their contract, and that they be enjoined from operating on those streets; that the Mayor and Aldermen be compelled to carry out their contract.
An answer was filed by the Mayor and Aldermen to the original bill of the Memphis City Railroad Company against them, in which they withdrew all objection to the construction of street railways under their charter, averring that satisfactory arrangements had been made between them.
A demurrer was filed to the cross-bill by the Board of Mayor and Aldermen, and by the Memphis City Railway Company, which was allowed by the Chancellor, and the cross-bill dismissed; from which they have appealed to this Court.
The questions presented for our consideration, are: Was there an agreement on the part of the Mayor and Aldermen with the association known as the Passenger *414 Bailway Company, for tbe construction of railways on certain streets designated in an ordinance of November, 1859, and was that agreement ratified by subsequent Legislative action; and did that ratification, without the assent of the Mayor and Aldermen of the City of Memphis, invest them with a franchise in the streets designated in the ordinance of- November, 1859 ?
It is insisted, for the complainants, the ordinance of the Board of Mayor and Aldermen of the 20th of Nov., 1859, authorizing the construction of street railways, and granting the exclusive right of operating them, is void. The power attempted to be exercised by the Board of Mayor and Aldermen is not warranted by the provisions of their charter; nor under the well settled laws of this State, could it be delegated. The right attempted to be granted by the ordinance of 20th of November, 1859, was an attempt to grant an exclusive privilege or franchise, in the streets of the city.
The right of granting a franchise, or an exclusive privilege to individuals, is, by the Constitution of the State, vested in the Legislature. It is a high and responsible trust — one that cannot be delegated, and to be exercised by the Legislature only when it is necessary for the public good: 3 Sneed, 364; 1 Head., 24.
A municipal corporation is established by the Legislative authority, and is vested, to a prescribed extent, with certain local powers to regulate its peculiar concerns according to its will. It has the right to exercise all the powers delegated by the charter. Any act done by those acting under the charter, inconsistent with the provisions of the charter, the Constitution or *415 laws of tbe land, is void. Haying no authority, under their charter, to grant the exclusive privilege of operating street railways on the streets in the City of Memphis to any class of individuals, it follows, the ordinance of 20th of Nov., 1859, is void. The right of a corporation to grant the exclusive right of operating street railways to individuals, came before the Supreme Court of New York, where the right had been granted by the city to persons to construct and operate railroads on the streets of New York. It was held, in several well considered cases, the corporation themselves had no power to confer upon individuals, by contract, the right of constructing and operating street railroads on public streets, for their own benefit or individual use: 27 New York Rep., 611; 14 New York Rep., 506.
This is clear, upon principle. The Legislature having no power to delegate the right to create an incorporation, or the rights of franchise in the streets of a city, the city authorities had no power to make such contracts, as it would be the grant of a franchise: 3 Sneed, 634. The power, under the Constitution, is vested in the Legislature to grant the right to use the streets and alleys of a city for lines of Railways: Tennessee & Alabama Railroad vs. E. W. Adams, 3 Head, 596; 27 Penn. Rep., 339; 7 Bur., 509. But this is a power that cannot be delegated. It can alone be exercised under the provisions of the Constitution, by the Legislature. The Mayor and Aldermen had no authority, therefore, to contract with Kirk & Small, and their associates, to operate street railroads in the City of .Memphis, or. to confer upon them the exclusive right. *416 It follows, the contract of 20th Nov., 1859, was void. What effect had the subsequent Legislature, in granting the complainants in the cross-bill a charter, upon their rights ? It becomes necessary, in the determination of this question, to examine the charter by which they are created a body politic and corporate. Their rights all depend upon and grow out of it, and the powers therein given by the Legislature. Admitting a contract was made between the Mayor and Aldermen and the complainants in the cross-bill, broad and comprehensive enough to embrace all the propositions assumed to have been made under the ordinance of 20th Nov., 1859, were other terms and conditions embraced within their charter and not within the original contract? For it is alone by their charter they are authorized to act; it is that which gives them life and being. By the 4th section of the Act of incorporation, power was given to said Company to execute all contracts and agreements entered into with the City of Memphis, for the use of the streets of said city; or they may enlarge the terms with said parties, and may operate street railroads by animal power, in all the streets of the City of Memphis, with the consent of the Gity of Memphis. Upon this section of the Act depends the rights of the complainants. The previous sections of the Act created them a body politic; but, in determining the rights of the parties, we must look to the charter to find the intention and meaning of the Legislature. In the construction of Statutes, Courts are governed by certain well-defined rules:
First, In the construction of a Statute which is ob *417 scure, the most natural sense is to be preferred, or that ■which is the least difficult of execution.
Second, The construction of each law must he made in relation to the subject matter of the Statute.
Third, A Statute ought to he so construed, if possible, so that every word shall have force and effect, and that no clause or word shall be superfluous or insignificant.
Fourth, Statutes are to be construed prospectively, unless the contrary intention of the Legislature be clearly expressed: (1 Bouvier’s Institutes, 41, and authorities cited.)
Apply these rules of construction to the charter under consideration. A contract, without authority ,on the part of the Mayor and Aldermen, had been entered into with an association called “The People’s Railway Company,” previous to the Act of incorporation. By the Act of incorporation, the power was given to execute all contracts or agreements, or to enlarge the terms of the same. No contract or agreement, by the terms of this charter, was binding on the City of Memphis, having no power to contract to operate street railways. The power was expressly delegated to make the necessary contracts; and it necessarily follows, that the assent of the city was necessary to bind them. By the express provisions of the charter, the consent of the city was necessary, before the franchise could become vested. It was evidently the intention of the Legislature, by the 4th section, that the right to operate street railroads should depend upon the consent of the Mayor and Aldermen of the City of Memphis. Has that been *418 obtained ? Tbe action of tbe board, on tbe 22d of March, 1860, is conclusive; in wbicb it determined it would recede from its undertaking of having a railway on Main Street; in wbicb the board say, it 'recognizes tbe moral, but not tbe legal, obligation to make good to those who have been incorporated into a street railway company, any real damages by change of purpose; either by the reduction of tbe bonus, should another street be selected in place of Main Street; or, if they choose to abandon the undertaking entirely, thereby, making compensation by way of damages, if any. Afterwards, on the 23d of April, 1861, a resolution was passed by the Board of Mayor and Aldermen, that they would be prepared to sanction the construction of street railroads upon the terms of the ordinance, whenever not less than two-thirds of the property holders express their willingness to have them established. These are the terms and conditions upon which the Mayor and Aider-men were willing the railway should be established, and the conditions upon which the consent of the Mayor and Aldermen would be given for the operation of street railways ; and it no where appears in the record, that the two-thirds of the property holders on said streets, ever expressed their willingness to have railways established.
The Legislature, in incorporating this Company, with a due regard to the public interest, choose to enact terms and conditions to the rights of the complainants in the cross-bill, in operating street railways.. The party seeking to enforce that right, must bring himself within the terms and conditions of the power creating the right, before he can have the aid of the Court to enforce the *419 rights. The complainants in the cross-bill, not baying obtained the assent of the Board of Mayor and Aldermen of the city, are not entitled to relief.
This is decisive of the case. Other questions have been argued, with great ability and much learning; but, in the view we have taken of the questions involved, it is unnecessary to express any opinion upon them, as the assent of the Mayor and Aldermen has not been obtained, as required by the charter, which is conclusive of the rights of the complainants in the cross-bill.
The decree of the Chancellor will be affirmed.